FILED
U.S. DISTRICT COURT
         DIV.

2JI JAN -4 AM 10: ??

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DERRICK EDWARD ROBINSON,

   Plaintiff,

v.

BRIAN OWENS; RANDY TILLMAN;
DARRELLE HART; SHIRLYN THOMAS;
DAVID R. PELKA; A. J. SUBREE;
and JOHN DOE,

   Defendants.

CIVIL ACTION NO.: CV509-056

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Hays State Prison in Trion, Georgia, filed a 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights while he was housed at Ware State Prison in Waycross, Georgia. Defendants filed a Motion for Summary Judgment, and Plaintiff filed a Response. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that he was denied access to restricted vegan meals (a part of the alternative entrée program) while he was housed at Ware State Prison. Plaintiff asserts that he needs vegan meals in order to "honor his religious diet." (Doc. No. 1, p.

AO 72A
(Rev. 8/82)

14). Plaintiff also asserts that Defendants Sabree and Doe[1] did not approve his application into the vegan meal program. Plaintiff claims the failure to provide him with vegan meals was a violation of his free exercise right.

Defendants assert that Plaintiff cannot hold Defendants Owens, Hart, Thomas, or Sabree liable based on respondeat superior principles. Defendants contend that Defendants Tillman and Pelka did not violate Plaintiff's rights. Defendants also contend that Defendant John Doe has not been identified and is entitled to summary judgment on any claim or claims Plaintiff asserted against him.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

---

[1] By Order dated June 25, 2010, Plaintiff was directed to identify Defendant Doe within thirty (30) days and was advised that his failure to do so could result in Defendant Doe's dismissal from this case. (Doc. No. 26). Plaintiff failed to follow this Court's directive, and, accordingly, Defendant Doe should be **DISMISSED** as a Defendant.

2

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

I. **Respondeat Superior**

Defendant Owens, the Commissioner of the Georgia Department of Corrections, and Defendant Hart, the Warden at Ware State Prison, contend that there is no evidence that they participated in any way in the decision to deny Plaintiff's application into the alternative entrée program. In fact, Defendants Owens and Hart contend, Plaintiff testified during his deposition that he sued them solely due to their positions. Defendant Thomas, the Deputy Warden of Care and Treatment, asserts that she had no involvement with Plaintiff's application to the alternative entrée program. Defendant Thomas also asserts that there is no evidence that she knew of Plaintiff's acceptance into this program, but that he had not been moved to a facility which participated in the

alternative entrée program.[2] Defendant Sabree avers that he had no personal involvement in any decision to accept or deny Plaintiff's application, nor did he instruct or encourage anyone at Ware State Prison to deny Plaintiff admission into the alternative entrée program.

Plaintiff responds that Defendant Hart is responsible for the day-to-day operations of Ware State Prison and was involved in the deprivation of Plaintiff's rights by not managing his staff. Likewise, Plaintiff asserts that Defendant Owens is responsible for the functioning of all Georgia prisons, and he became involved in the deprivation of Plaintiff's rights due to his negligence in managing his subordinates. Plaintiff also asserts that Defendant Thomas was aware of his application into the alternative entrée program, and she was involved in the deprivation of his rights by denying or rejecting his grievances.[3]

In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Id. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated

---

[2] Ware State Prison is not equipped to participate in the alternative entrée program. (Doc. No. 36-1, p.2).

[3] Plaintiff does not address his claims against Defendant Sabree with any specificity in his Response to Defendants' Motion for Summary Judgment.

4

occurrences." Id. Having actual notice of the alleged unconstitutional practices combined with a refusal to investigate or respond comprises such a causal connection.

The evidence before the Court reveals that Plaintiff seeks to hold Defendants Owens, Hart, Thomas, and Sabree liable for the alleged violations of his constitutional rights based solely on their supervisory positions, which he cannot do in a section 1983 cause of action. Specifically, during his deposition, Plaintiff testified that Defendant Owens is "responsible for the operations, the overall operations, of those institutions" as Commissioner of the Georgia Department of Corrections. (Doc. No. 36-4, pp. 9-10). Plaintiff agreed with defense counsel that it was "fair to say" that he sued Defendant Owens "because of his role as the commissioner." (Id. at 10). Additionally, Plaintiff testified that Defendant Hart, as the Warden at Ware State Prison, "is responsible for the operations at Ware State Prison, over all responsible for Ware State Prison", and that is why he filed suit against Defendant Hart. (Id.). Plaintiff stated that he did not contact Defendants Owens or Hart about his complaints. As for Defendant Thomas, Plaintiff testified that she rejected the grievance he filed as stating an issue (housing) which was non-grievable. However, a prison official's rejection of a grievance cannot form the basis of a § 1983 claim. See Pressley v. Beard, 2005 WL 2347369, at *4 (M.D. Pa. Sept. 26, 2005) (noting that liability cannot be placed on a prison official because the official failed to take corrective action following the plaintiff's unsuccessful grievance).

Defendants Owens, Hart, Thomas, and Sabree submitted Affidavits, as well. Defendants Owens, Hart, and Sabree all declare that they "had no personal involvement with any decision to accept or deny any application" or any other request

5

Plaintiff may have made regarding the alternative entrée program. (Doc. Nos. 34-5, p. 2; 34-4, p. 2; 35-2, p. 2). Defendants Owens, Hart, and Sabree also declare that they never "instructed, directed or encouraged anyone at Ware State Prison to deny" Plaintiff admission into the alternative entrée program. (Doc. Nos. 34-5, p. 2; 34-4, p. 2; 35-2, p. 2). Defendant Thomas avers in her Affidavit that she denied Plaintiff's Informal Grievance Number 22981 because she believed his request to be transferred to another prison was a routine housing assignment issue, which is not subject to the grievance procedure. Because of this belief, Defendant Thomas did not investigate whether Plaintiff was accepted into the alternative entrée program, but, if she had investigated, she would have learned the Inmate Classification Division in Atlanta denied Plaintiff's application. Defendant Thomas also avers that there was nothing she could do to facilitate Plaintiff's request to be transferred to an institution which offers the alternative entrée program. (Doc. No. 35-3, pp. 2-3).

Plaintiff has submitted no documentation which reveals the existence of a genuine issue of material fact on this issue. It is clear Plaintiff seeks to hold Defendants Owens, Hart, Thomas, and Sabree liable based on their positions as: the Commissioner of the Georgia Department of Corrections; the Warden at Ware State Prison; the Deputy Warden of Care and Treatment at Ware State Prison; and the Director of Reentry Services of the Georgia Department of Corrections, respectively. Accordingly, Defendants Owens, Hart, Thomas, and Sabree should be entitled to summary judgment in their favor, and this portion of Defendants' Motion should be **granted**.

AO 72A
(Rev. 8/82)

## II. Religious Exercise[4]

Defendants Tillman and Pelka assert that they approved, at their respective levels, Plaintiff's request to be placed in the alternative entrée program. Defendants Tillman and Pelka allege that an inmate's application for the alternative entrée program must be approved at the institutional level, the Field Operation level, and then the Inmate Classification level. Defendants Tillman and Pelka contend that the Inmate Classification level in Atlanta denied Plaintiff's application, and thus, this is why Plaintiff was unable to participate in the alternative entrée program. Defendants Tillman and Pelka also contend that they had no involvement with the Inmate Classification Committee's decision to deny Plaintiff's application, and Plaintiff can offer no credible evidence to show that they participated in this decision. Defendants Tillman and Pelka assert that they do not recall Plaintiff writing them letters advising them that he had been approved for the alternative entrée program, but, even if they had received these letters, they could not have transferred him to another facility.

Plaintiff avers that Defendant Pelka, as the Chaplain, is responsible for the "reasonable religious care" of all inmates at Ware State Prison. (Doc. No. 42-1, p. 5). According to Plaintiff, Defendant Pelka "acknowledge[ed] and learn[ed]", and then failed to do anything to correct the situation (i.e., having Plaintiff transferred to a facility which served alternative entrées). (Id.). Plaintiff contends that, when Defendants Tillman and Pelka approved Plaintiff's application for the alternative entrée program, they should not have forwarded his application to Atlanta, as the Standard Operating Procedure governing the alternative entrée program does not allow these Defendants to forward an

---

[4] Given the undersigned's recommended disposition of Plaintiff's claims against Defendants Doe, Owens, Hart, Thomas, and Sabree, the analysis and discussion concerning Plaintiff's remaining claims are focused on Defendants Tillman and Pelka.

7

inmate's application to Atlanta. Plaintiff asserts that Defendants Tillman and Pelka are responsible for the deprivation of his rights because they denied him participation in the alternative entrée program at Ware State Prison and did not transfer him to another facility which offers this program.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). Deference is given to prison officials, and, as a result, courts employ a "reasonableness" test to determine whether a regulation infringes constitutional rights. Id. The Supreme Court has outlined four factors to be considered in determining the reasonableness of a regulation: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." Turner v. Safley, 482 U.S. 78, 89-91(1987). The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003).

AO 72A
(Rev. 8/82)

Defendants Tillman and Pelka submitted Affidavits in support of their contentions that they did not interfere with Plaintiff's exercise of his religion. Defendants Tillman and Pelka declare that, if an inmate requests to be placed in the alternative entrée program, his application will be preliminarily approved at the institutional level, then forwarded to the Georgia Department of Corrections' Southeastern Division Field Operations Manager ("FOM") for approval. If the FOM (in this case, Defendant Tillman) believes the application should be granted, the inmate's application will be forwarded to the Inmate Classification division in Atlanta for final approval. (Doc. Nos. 36-1, p. 2; 36-2, p. 2). Defendant Pelka states that he informed Plaintiff that his application had been approved at the institutional level (by Defendant Pelka) and at the Field Operations level (by Defendant Tillman), but the Inmate Classification division in Atlanta had to approve his application for the alternative entrée program before he was accepted. (Doc. No. 36-1, pp. 3, 21-23). Defendants Pelka and Tillman declare that the Inmate Classification division denied Plaintiff's application on June 30, 2009, and they did not have any input or involvement in this decision. (Doc. Nos. 36-1, p. 4; 36-2, p. 4).

In contrast, Plaintiff has submitted nothing to create a genuine issue of material fact regarding his claim that Defendants Pelka and Tillman interfered with his free exercise right. To the contrary, the evidence before the Court reveals that Defendants Pelka and Tillman in no way interfered with this right.[5] In fact, Plaintiff fails to present any evidence that Defendants Pelka's and Tillman's actions burdened his free exercise

---

[5] The undersigned recognizes Plaintiff's averment that his application to the alternative entrée program should not have been sent to Atlanta for final approval, per SOP IVL01-0027. While the undersigned agrees that the applicable SOP does not seem to require the approval of the Inmate Classification Committee in Atlanta (see Doc. No. 36-1, pp. 7-16), Plaintiff has failed to show that Defendants Tillman's and Pelka's approval of his application and subsequent forwarding to the Inmate Classification Committee violated his free exercise right.

AO 72A
(Rev. 8/82)

right in any way. Defendants Pelka and Tillman should be entitled to summary judgment in their favor, and this portion of Defendants' Motion should be **granted**.

III. **Equal Protection**

Defendants Tillman and Pelka assert that they are entitled to summary judgment on Plaintiff's equal protection claim because Plaintiff denied bringing an equal protection claim and because there is no evidence any Defendant treated Plaintiff differently than any other similarly situated inmate based on a constitutionally protected interest.

"'To establish an equal protection claim, a prisoner must establish that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race.'" Brunskill, 141 F. App'x at 776 (quoting Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001)).

During his deposition, Plaintiff agreed with Defendants' counsel that he did not make any claim regarding a violation of his right to equal protection. Plaintiff also agreed that the only claim he brought was that his First Amendment right to practice his religion had been violated. (Doc. No. 36-4, p. 11).

Given Plaintiff's testimony, Defendants Pelka and Tillman should be entitled to summary judgment on Plaintiff's purported equal protection claim and this portion of Defendants' Motion should be **granted**.

It is unnecessary to address the remaining grounds of Defendants' Motion for Summary Judgment.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 4th day of January, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)